UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN M. BELINSKY | : |
|     Plaintiff | : |
| | :   CIVIL ACTION NO. |
| v. | :   3:07-cv-258 (JCH) |
| | : |
| THOMAS PETRUNY and MARY ANN MASCOLO | : |
| | :   MAY 19, 2008 |
|     Defendants | : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]**

Plaintiff Joan M. Belinsky has spent a long career teaching in the Seymour Public Schools. Recently, Belinsky came to hold the view that her job responsibilities had changed significantly, and that she was now performing much more administrative work than she had previously. Notwithstanding this alleged change, the school district continued to pay Belinsky under the collective bargaining agreement for "teachers," rather than under the separate agreement that governed "administrators." Belinsky believes that it is unconstitutional for the district to continue to pay her as a teacher, and she therefore brought the instant lawsuit against two district officials, defendants Thomas Petruny and Mary Ann Mascolo. The defendants have moved for Summary Judgment. See Doc. No. 23. For the reasons that follow, the court **GRANTS** that Motion.

**I.**    **STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

1

(1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in her favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. FACTUAL BACKGROUND[1]

Belinksy is a tenured teacher, and she is certified to teach in Connecticut's public schools. She first began teaching in Seymour in 1974. Belinsky Dep. at 12. As of May, 2003, her title was "Reading Specialist," and she worked in this position at Bungay Elementary, one of three elementary schools in the school district. Belinsky was one of three Reading Specialists in Seymour, with each Reading Specialist assigned to one of the three elementary schools.

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the plaintiff where there is evidence to support her allegations.

For collective bargaining purposes, the school district deemed all three Reading Specialists to be "teachers," and it paid them all under the contract it had with the teachers' union. Belinsky appears to believe that, as a Reading Specialist, her duties were more teaching-related than they were administrative. Id. at 20.

During the times relevant to this lawsuit, defendant Mascolo was the Assistant Superintendent of Schools in Seymour. According to Belinsky, in June 2006, Mascolo told Belinksy and the other two Reading Specialists that they needed to attend a meeting with her. Id. at 16. At that June meeting, Mascolo handed the three Reading Specialists a job description for a "Language Arts Consultant." Id. at 15-16, 19. Belinsky believes that Mascolo then implemented this new job description, effectively converting the three Reading Specialists to Language Arts Consultants. Id. at 19, 28.

The job description for "Language Arts Consultant" lists a variety of responsibilities, many of which might be considered "administrative." For example, Language Arts Consultants must assist in selecting and distributing materials for the Language Arts program; they must provide "guidance and assistance" to classroom teachers and staff by doing things like modeling lessons, coaching teachers, and designing appropriate instruction; they assist with the administration of tests; they present professional development for staff by "providing demonstration lessons and feedback to teachers;" they maintain and inventory reading materials; they compile information to assist in the design of reading instruction; and they participate in reading-related committees. Belinsky Dep. Exh. 9. Language Arts Consultants also "[p]rovide direct instruction to students when deemed necessary by the principal." Id. Belinsky estimates that, as a Language Arts Consultant, she spends about 90% of her time on

3

tasks she classifies as "administrative," and only about 10% of her time teaching students. Belinsky Dep. at 46. Belinsky spends much less time working with students then she did when she was a Reading Specialist. Id. at 22.

As a Language Arts Consultant, Belinsky has relatively limited supervisory responsibilities. She does supervise a few "noncertified" staff members (i.e. school staff members, such as members of the school's literacy staff, who do not hold any teaching certifications from the state Department of Education). Id. at 140; id. Exh. 9. However, Belinsky has almost no budgetary responsibilities: her budgetary role is limited to submitting requests for supplies to the building administrator and working with the PTA to budget for reading activities. Id. at 139-140. Additionally, Belinsky does not engage in any significant supervision of "certified" staff members. She does not evaluate certified staff. Id. at 140. Nor does she discipline certified staff. Id. at 140. Indeed, to the extent she can be said to "supervise" certified staff members at all, that "supervision" is limited to talking with first-year and third-year teachers, on a monthly basis, to help coach them on reading instruction and to help them model lessons. See id. at 141; Defendants' 56(a)(1) Stat. at ¶ 87; Plaintiff's 56(a)(2) Stat. at ¶ 87.

Individuals who are "certified" by the Connecticut Department of Education can be certified in many different areas, with each certification given a unique three-digit identifying code. Belinksy Dep. Exh. 4. These certifications are important, as state regulations define specific jobs that may be held only be individuals with a particular certification. See Conn. Agencies Regs. § 10-145d-401(a). The state classifies many of these certifications as "teaching" endorsements, such as its certifications for teaching Middle School English (code 215), Grades 7-12 Earth Science (code 033), and Physical

4

Education (code 044). Belinsky Dep. Exh. 4. Other certifications are classified as "administrative" endorsements, including state certifications to be a School Business Administrator (code 085), Superintendent of Schools (code 093), and Department Chairperson (code 105). Id.

Two of the "administrative" endorsements are particularly relevant to this case. Code 092 is the certification for "Intermediate Administration or Supervision." Id. Code 097 is the certification for "Reading and Language Arts Consultant." Belinsky holds an 097 certification, as do the other two Language Arts Consultants in Seymour. Belinsky Dep. at 35. Belinsky does not hold an 092 certification. Id. at 20.

Under Belinsky's interpretation of the state regulations, when she became a Language Arts Consultant, she moved into a position that required an 097 certification.[2] See Conn. Agencies Regs. § 10-145d-567 (explaining the kinds of jobs that require certification as a Reading and Language Arts Consultant). Because 097 is classified by the state as an "administrative" endorsement, and because Belinsky performed mostly "administrative" duties in her new job, Belinksy began to consider herself an "administrator." Belinsky Dep. at 39, 46. Nonetheless, Belinsky has continued to remain a member of the teachers' union for collective bargaining purposes, and she has not been permitted to join the administrators' union. The school district has continued to pay her under the contract it has with the teachers' union, rather than under the more lucrative contract it has with the administrators' union.

On September 11, 2006, Belinsky filed a grievance against the school district.

---

[2] Belinsky does not argue that the Reading Specialist position required an 097 certification.

She alleged that she had been improperly placed in the teachers' collective bargaining unit, and she requested that she be assigned to the administrators' unit. Belinsky Dep. Exh. 13. After a brief hearing, defendant Petruny, the then-Superintendent of the school district, denied the grievance. Petruny explained that, in his view, the matter was not grievable because it concerned a question of statutory interpretation, rather than an interpretation of the district's contracts with the unions. See id. Exh. 14; see also Conn. Gen. Stat. § 10-153b(a) (defining the composition of the teachers' and administrators' collective bargaining units); id. § 10-153c (providing for a separate arbitration procedure to resolve disputes over collective bargaining representation). Petruny nonetheless went on to explain why he would deny the grievance on the merits. Belinsky Dep. Exh. 14.

Belinsky next asked the administrators' union if they would help her join the administrators' bargaining unit. She separately asked the teachers' union if they would help her leave the teachers' bargaining unit. Both unions declined Belinsky's requests. See Belinsky Dep. at 52-53. Belinsky then proceeded to file a complaint with the State Board of Labor Relations, which rejected her claim.

Undaunted, on February 27, 2007, Belinsky filed the instant lawsuit. Although the case was initially filed in Connecticut Superior Court, it was timely removed to this court. In her Amended Complaint, Belinsky alleges that the defendants violated her federal constitutional rights to equal protection, procedural due process, and substantive due process. See Doc. No. 14 at 4-5. The defendants are sued in their individual capacities only, and the plaintiff seeks only money damages against them. See id. at 4.

**III.    ANALYSIS**

   A.    Procedural Due Process

The court begins with Belinsky's procedural due process claim. The Fourteenth Amendment's Due Process Clause prevents state officials from depriving "any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, sec. 1. The Due Process Clause has been interpreted to have a procedural component that prevents states from depriving individuals of property interests without adequate procedural protection. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). However, in order to be able to assert a procedural due process claim, an individual must identify a "property interest" that she has been improperly deprived of.[3] See id. at 538.

Property interests do not arise directly from the Constitution; they are instead created and defined by other sources, such as state law. Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). Here, Belinksy asserts that she had a property right in receiving an administrator's salary, and she points to both the administrators' contract, and Connecticut statutory law, as the sources of that alleged property right. Of course, Belinsky can only be governed by the administrators' contract if she is properly considered part of their bargaining unit. If state law instead assigns her to the teachers' bargaining unit, her procedural due process claim fails. See id. at 757 (explaining that when a plaintiff relies on her interpretation of state law as a basis for her claimed entitlement, she must be correct in that interpretation to have a valid claim); Bd. of

---

[3] Belinsky has not argued that she was deprived of any "liberty" interest.

7

Regents v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

Belinsky's claim fails because Connecticut law clearly assigns her to the teachers' bargaining unit. The relevant statute explains:

> The "administrators' unit" means the certified professional employee or employees in a school district . . . <u>employed in positions requiring an intermediate administrator or supervisor certificate, or the equivalent thereof</u>, and whose administrative or supervisory duties, for purposes of determining membership in the administrators' unit, shall equal at least fifty per cent of the assigned time of such employee. . . . The "teachers' unit" means the group of professional employees who hold a certificate . . . issued by the State Board of Education . . . and are employed by a local or regional board of education in positions requiring such a certificate . . . and are not included in the administrators' unit . . . .

Conn. Gen. Stat. § 10-153b(a)(1)-(2) (emphasis added). Accordingly, to be assigned to the administrators' unit, an individual must spend the majority of her time doing administrative duties <u>and</u> she must be in a position that requires an intermediate administrator or supervisor certificate (<u>i.e.</u> an 092 certification) or its equivalent.

Plainly, Belinsky's position does not require an 092 certification.[4] The 092 certificate is only required when an employee has been specifically designated by the local school district as a "deputy superintendent, assistant superintendent, principal, assistant principal, curriculum coordinator, [or] supervisor of instruction," or when the employee "has the primary responsibility for directing or coordinating or managing

---

[4] Belinsky has never maintained that an 092 certification is required for her position; she has only argued that her position requires an 097 certification.

8

certified staff and resources, or [is] responsible for summative evaluation of certified staff." Conn. Agencies Regs. § 10-145d-572(a). Belinsky has not been specifically designated by the school district to be in any of the named positions, and she is not responsible for evaluating certified staff. Additionally, she does not have primary responsibility for managing/directing/coordinating certified staff; indeed, she does little to no supervision of certified staff members. It is worth noting that, if Belinsky's position required an 092 certification, Belinsky would have to be removed from that position because she lacks an 092 certification.

Nor can Belinsky plausibly argue that an 097 certification is the "equivalent" of an 092 certification. To the contrary, state law draws a clear line between the two. See Conn. Agencies Regs. § 10-145d-567(b) (explaining that a Language Arts Consultant "whose job function requires summative evaluation of certified staff shall be required to hold the [092] certificate," rather than an 097 certification).[5]

In light of the plain statutory language, Belinsky is assigned to the teacher's bargaining unit. She therefore has no legitimate claim of entitlement to be governed by

---

[5] State law also clearly defines the kind of positions appropriate of 097 certification. That certification is required for

> anyone serving in the employ of a board of education as supervisor, consultant or coordinator in the area of reading instruction, including anyone whose function is to . . . (1) Work with teachers and other school personnel in curriculum planning and revision as it relates to the total reading and language arts program; or (2) Assist classroom teachers, other teachers of reading and other school personnel in improving instruction in reading and language arts, including direct instruction to students.

Conn. Agencies Regs. § 10-145d-567(a).

the administrators' contract, and hence no property interest. Her procedural due process claim fails.

B. Equal Protection

Belinsky next argues that the defendants have violated her equal protection rights. Essentially, Belinsky is arguing that Connecticut violates her rights by classifying her as a "teacher" for collective bargaining purposes, even though she believes she mostly performs "administrative" functions.[6]

Where, as here, a statutory classification does not make distinctions along suspect classes, and does not burden any fundamental rights, it "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). This is a highly deferential standard of review, and a legislative classification "may be based on rational speculation unsupported by evidence or empirical data." Id. at 314-15.

The state statute passes this test. Individuals who work in jobs requiring an intermediate administrator/supervisor certification (i.e. an 092 certification) are individuals with important management and supervisory responsibilities: they manage and supervise certified professional educators. Individuals like Belinsky, who work in jobs that require 097 certification, may supervise some non-certified staff members, may hold an "administrative" certification, and may even perform substantial

---

[6] Although Belinsky has sued individual defendants for their individual actions, she is really just suing them for following state law. Accordingly, her equal protection claim is best understood as an attack on the state statute itself.

10

"administrative" functions. However, 097 certificate holders do not have the same important managerial responsibilities as 092 certificate holders. Indeed, individuals like Belinsky are managed <u>by</u> individuals with 092 certification,[7] but do not themselves manage other highly trained professionals. Because of this, the state could reasonably think that grouping 097 individuals with 092 individuals for collective bargaining purposes could lead to interest conflicts. Relatedly, the state could reasonably conclude that 097 individuals were better aligned with classroom teachers, who also do not manage certified staff members.

The state's classification was not wholly irrational. Accordingly, Belinsky's equal protection claim fails.[8]

### C. Substantive Due Process

Belinsky finally claims that the defendants' actions violated her substantive due process rights. However, government actions will only violate substantive due process rights when the actions "shock[] the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). In order to shock the conscience, official conduct "must be

---

[7] Belinsky reports to her school's Principal and to the Director of Curriculum. Belinsky Dep. Exh. 9. Both of those positions require 092 certification. See Conn. Agencies Regs. § 10-145d-572(a).

[8] At times, both sides seem to frame Belinsky's claim as though it were a "class of one" equal protection claim. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 565 (per curiam). This frame is inappropriate: as Belinsky seems to recognize, the school district treated all 097 certificate-holders identically.
 In any event, even if Belinsky's claim were treated as a class of one claim, the claim would still fail. To succeed, Belinsky would still need to show that any difference in treatment failed rational basis review. See, e.g., Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005) (applying rational basis review to a class of one equal protection claim). As explained above, the difference in treatment was rationally explained.

outrageous and egregious under the circumstances," Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007), and must be "brutal and offensive to human dignity," Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002). Here, the defendants simply followed a reasonable state law that classified school employees for collective bargaining purposes. The defendants' actions do not come even remotely close to satisfying the "shock the conscience" standard.

## IV. CONCLUSION

The defendants' Motion for Summary Judgment [Doc. No. 23] is **GRANTED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 19th day of May, 2008.

                                           /s/ Janet C. Hall
                                           Janet C. Hall
                                           United States District Judge